# Case No. 23-55284

# United States Court of Appeals
# For the Ninth Circuit

———————

Dennis M. Buckovetz,

Plaintiff and Appellant,

v.

United States Department of the Navy,

Defendant and Appellee.

———————

Appeal from The United States District Court,
Southern District of California, San Diego
Case No. 3:21-cv-00640-WQH-KSC
Hon. William Q. Hayes

———————

## Appellant's Opening Brief

———————

SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
Todd E. Lundell (#250813)
650 Town Center Drive, 10th Floor
Costa Mesa, CA 92626
tlundell@sheppardmullin.com
Tel: 714-513-5100

SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
Travis J. Anderson
Sean Mann-O'Halloran
12275 El Camino Real, Suite 100
San Diego, CA 92130
Tanderson@sheppardmullin.com
smann-ohalloran@sheppardmullin.com
Tel: 619-720-8900

Attorneys for Appellant Dennis M. Buckovetz

# Table of Contents

<u>**Page**</u>

Introduction ................................................................................. 6

Statement of Jurisdiction .......................................................... 8

Statement of the Issues ............................................................. 8

Statement of Facts and Procedural History ............................ 9

    A.   Buckovetz discovers an unlawful scheme by General
          Bierman to sell Marine Corps memorabilia ......................... 9

         1.   MCCS is funded in part by selling Marine Corps
             memorabilia ................................................................. 9

         2.   General Bierman oversees an illicit scheme to sell
             memorabilia to visitors, undercutting MCCS's
             revenues ................................................................... 10

    B.   Buckovetz's FOIA requests and the Navy's suspicious
          responses ......................................................................... 12

         1.   Buckovetz is carbon-copied on an email showing
             9Gen. Bierman's direct involvement in the
             scheme ....................................................................... 12

         2.   Buckovetz makes a FOIA request for additional
             emails referencing the "coins" scheme ...................... 13

         3.   The MCRD responses omit emails that should
             have been on MCRD's server ...................................... 13

    C.   Buckovetz sues the Navy for violations of FOIA, and
          the district court grants summary judgment to the
          Navy .................................................................................. 16

         1.   Buckovetz files this lawsuit ....................................... 16

         2.   The Navy moves for summary judgment ................... 16

         3.   Buckovetz seeks discovery ......................................... 19

         4.   The district court orders the Navy to submit
             additional declarations ............................................. 20

         5.   The Navy submits supplemental declarations
             that leave open questions ........................................... 21

      6.     Buckovetz responds by explaining that the only possible reason for the missing Five Emails is that they were deleted ................................................. 22

      7.     The district court denies discovery and grants summary judgment ....................................................... 24

Summary Of Argument ................................................................. 26

Standard of Review ...................................................................... 27

Legal Discussion .......................................................................... 28

I     The Trial Court Erred In Granting the Navy's Motion for Summary Judgment ...................................................................... 28

II    The District Court Abused Its Discretion By Not Allowing Discovery Before Granting Summary Judgment ......................... 35

Conclusion ................................................................................... 39

Certificate of Compliance ............................................................ 40

Certificate of Service ................................................................... 401

# Table of Authorities

**Page(s)**

<u>Cases</u>

*Am. Small Bus. League v. United States Dep't of Def.*
2019 WL 4416613 (N.D. Cal. Sept. 15, 2019)....................................36

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986)............................................................................29

*Chambers v. U.S. Dept. of Interior*
568 F.3d 998 (D.C. Cir. 2009) .........................................28, 29, 31 ,35

*Jud. Watch, Inc. v. U.S. Dep't of Com.*
34 F. Supp. 2d 28 (D.D.C. 1998) ......................................................28

*Kissinger v. Reps. Comm. for Freedom of the Press*
445 U.S. 136 (1980)............................................................................28

*Lane v. Department of Interior*
523 F.3d 1128 (9th Cir. 2008)............................................................27

*Lion Raisins, Inc. v. U.S. Dep't of Agric.*
636 F. Supp. 2d 1081 (E.D. Cal. 2009) .............................................36

*Martinez v. Signature Seafoods Inc.*
303 F.3d 1132 (9th Cir. 2002)...........................................................29

*Minier v. CIA*
88 F.3d 796 (9th Cir. 1996)................................................................37

*Murphy v. Federal Bureau of Investigation*
490 F. Supp. 1134 (D.D.C. 1980) ......................................................36

*Scharringhausen v. United States*
2008 WL 686691 (S.D. Cal. Mar. 13, 2008)......................................36

*Singh v. Gonzales*
491 F.3d 1019 (9th Cir. 2007)............................................................34

*Smart-Tek Services, Inc. v. U.S. Internal Revenue Service*
829 Fed.Appx. 224 (9th Cir. 2020).....................................................27

*United States v. Tory*
52 F.3d 207 (9th Cir. 1995)................................................................33

*Zemansky v. U.S. E.P.A.*
   767 F.2d 569 (9th Circ. 1985) ............................................................ 28

Statutes

5 U.S.C. § 552(a)(4)(B)................................................................................ 8

28 U.S.C. § 1291 ......................................................................................... 8

Other Authorities

Federal Rule of Civil Procedure 30(b)(6) ................................................. 20

## Introduction

Plaintiff-Appellant Dennis M. Buckovetz appeals from an order granting Defendant-Appellee United States Department of the Navy's pre-discovery motion for summary judgment. Buckovetz's complaint asserts that the Navy violated the Freedom of Information Act ("FOIA") by intentionally deleting emails in response to his FOIA request. In granting summary judgment, the district court acknowledged that the Navy's failure to produce certain emails was "most plausibly explained by the possibility that an end user"—that is, someone with the Navy—"deleted the data." The court nonetheless granted summary judgment because the Navy's evidence was "consistent with" the "possibility" that the missing emails were deleted *before* Buckovetz's FOIA request and not in response thereto. The court also denied Buckovetz's motion for limited discovery into the very question of *when* the emails were deleted because the Navy "has adequately explained its search process" and the Navy's affidavits "do not evidence bad faith."

The district court's order is erroneous and must be reversed. Because the evidence established that the most likely explanation for the missing emails was that the Navy had deleted them, the question

on summary judgment was whether *after drawing all inferences in favor of Buckovetz*, the Navy had eliminated any disputed issue of fact regarding the timing of when those emails were deleted. That is, did the Navy's evidence—*viewed most favorably to Buckovetz*—establish that the emails were deleted before and not after Buckovetz's FOIA request? The answer to that question is "no," and the district court did not hold otherwise. Rather, the court erred by drawing inferences in favor of the Navy and granting summary judgment on the mere finding that Buckovetz had not rebutted the "competing possibility" the emails were deleted before the FOIA request. That error requires reversal.

Moreover, the district court should have allowed Buckovetz to conduct limited discovery before ruling on the Navy's summary judgment motion. Although courts may, under some circumstances, grant pre-discovery summary judgment in FOIA cases, those cases most often involve narrow questions about the scope of the defendant's efforts to locate the requested documents. Such questions are often resolved by clear, unambiguous declarations from the defendant. This is not such a case. The Navy's declarations in support of summary judgment are vague and do not unambiguously answer the question of when the

missing emails were deleted. They establish only "possible" answers to that question and are entirely consistent with the possibility that someone at the Navy deleted the emails after and in response to Buckovetz's FOIA request.

There remains, therefore, a clear factual dispute over whether the Navy complied with its FOIA obligations. This Court should reverse the grant of summary judgment and allow the case to proceed in the ordinary course. At minimum, this Court should require the district court to allow Buckovetz to take discovery before ruling on summary judgment.

## Statement of Jurisdiction

The district court had jurisdiction under FOIA. 5 U.S.C. § 552(a)(4)(B). This Court has jurisdiction over this appeal under 28 U.S.C. § 1291 because the district court's grant of summary judgment to the Navy constitutes a final decision.

## Statement of the Issues

1.　　Whether the district court properly granted summary judgment to the Navy on Buckovetz's claim that the Navy violated FOIA by concealing or destroying responsive documents.

2.     Whether the district court abused its discretion in denying

Buckovetz's request for discovery before deciding the Navy's summary

judgment motion.

## Statement of Facts and Procedural History

The FOIA requests at the heart of this appeal were directed

toward uncovering an unlawful scheme by certain Marine Corps officers

to sell memorabilia without official oversight. Part A will describe that

scheme as alleged in the complaint. Part B will describe the FOIA

requests and responses, and Part C will describe the underlying

litigation.

### A.     Buckovetz discovers an unlawful scheme by General Bierman to sell Marine Corps memorabilia[1]

#### 1.     MCCS is funded in part by selling Marine Corps memorabilia

The Marine Corps Recruit Depot ("MCRD") is a military

installation charged primarily with the initial training of enlisted

recruits living west of the Mississippi River. [ER-211.] As part of that

mission, MCRD hosts approximately 40 graduation ceremonies per year

for recruits who have successfully completed their training. [*Ibid.*]

---

[1]     These background facts are taken from the allegations of the
complaint.

The Marine Corps Community Services ("MCCS") is a government entity within the Department of Defense that operates programs to support and enhance the operational readiness, war fighting capabilities, and quality of life for Marines, their families, and military retirees. [ER-211.] MCCS funds these programs in part by selling Marine Corps memorabilia, particularly at MCRD's graduation-related activities. [*Ibid.*] Sales at those graduation activities bring in much of MCCS's business revenue as family members purchase mementos and souvenirs to commemorate the occasion. [*Ibid.*] One of the most popular items is Challenge Coins ("Coins"), which are given to recruits upon completion of their training. [ER-211–12.]

### 2. General Bierman oversees an illicit scheme to sell memorabilia to visitors, undercutting MCCS's revenues

When non-party General James W. Bierman took command of MCRD in July 2013, he perpetuated an illegitimate practice of having Marines, while on duty and in uniform, sell Coins and other Marine Corps memorabilia at graduation activities. [ER-212–13.] Revenues were collected in cash only, accumulated off-the-books, and approached or exceeded $100,000 annually. [ER-212.] Several Marines close to

Gen. Bierman participated in this illicit scheme, including his Chief of Staff, Colonel Michael Lee, and his Commanding Officer of the Recruit Training Regiment, Colonel Jim Gruny. [*Ibid.*]

Gen. Bierman's scheme cannibalized MCCS's own authorized sales of Marine Corps merchandise and diminished MCCS's revenues. [ER-213.] Marine Corps leadership raised the resulting operating shortfalls with both Gen. Bierman and MCCS Director Thomas W. Spencer. [*Ibid.*] Recognizing the problem, Director Spencer objected to Gen Bierman's unauthorized sales. [*Ibid.*] And Gen. Bierman's Staff Judge Advocate, Lieutenant Colonel John Ming, also raised concerns regarding the practice. [ER-214.]

Gen. Bierman refused to stop, however, continuing the unauthorized sales and enjoying a functional "slush fund" for his own personal projects, including holiday parties, unit gatherings, dinners, and other events hosted at MCRD. [ER-214.] Nonetheless, Gen. Bierman publicly denied that he had ever seen Marines in uniform making unauthorized sales. [*Ibid.*]

### B. Buckovetz's FOIA requests and the Navy's suspicious responses

#### 1. Buckovetz is carbon-copied on an email showing Gen. Bierman's direct involvement in the scheme

Buckovetz is a retired Marine Corps Lieutenant Colonel who served as an infantry officer in ground combat operations during the Vietnam War and has been awarded numerous medals in his 21 years of active duty. [ER-211.] Buckovetz subsequently served as the MCCS Administrative Director at the MCRD in San Diego. [*Ibid.*]

On December 18, 2014, Buckovetz was carbon-copied on a string of four emails between Gen Bierman, MCCS Director Spencer, Col. Lee, and others with the subject "Coins." Gen. Bierman started the string with an email to Col. Lee and Director Spencer stating: "We sold all one hundred by 0815. I don't want to ever run out . . . Ever . . . Again!!!!." [ER-215; ER-227–28.] (ellipses in original).] Director Spencer assured Col. Lee, "[t]his will not happen again." [ER-227.] The email removed all doubt that Gen Bierman was an informed and active participant in the diversion of revenues from MCCS.

### 2. Buckovetz makes a FOIA request for additional emails referencing the "coins" scheme

Hoping to uncover the full scope of Gen. Bierman's involvement in the unauthorized selling of merchandise that was harming MCCS, Buckovetz submitted a FOIA request to MCRD on January 23, 2015. That request sought emails among Gen. Bierman and his associates using the word "coin." [ER-230.] Specifically, the FOIA request sought "all email messages dated on or after 1 May 2014 that have any of the following email addresses: mark.tull@usmc.mil, jim.gruny@usmc.mil, michael.lee@usmc.mil, james.bierman@usmc.mil, thomas.w.spencer@usmc-mccs.org, and john.ming@usmc.mil on the 'From:', 'To:', 'Cc:' or 'Bcc:' lines AND contain the word 'coin' or 'coins' on the subject line or within the body of the message." [*Ibid.*]

### 3. The MCRD responses omit emails that should have been on MCRD's server

MCRD referred the FOIA Request in part to MCCS Headquarters for processing. [ER-135.] This was necessary because MCCS and MCRD use different email servers and domains, so MCRD did not have access to all the emails requested by Buckovetz. [ER-216.] The MCRD uses ".mil" as an email domain whereas MCCS uses ".org." Each domain corresponds to a different server, such that ".org" emails are stored

separately from ".mil" emails. [*Ibid.*] Therefore, emails to, from, cc'ing, or bcc'ing those with ".mil" email addresses would be stored on the MCRD server. [*Ibid.*] But emails to, from, cc'ing, or bcc'ing MCCS Director Spencer using his ".org" email address would reside on the MCCS server. [*Ibid.*] Those latter emails would not be accessible by MCRD and would need to be processed by headquarters. [*Ibid*; *see also* ER-135.]

In March 2015, MCRD produced 319 pages of records containing 384 individual emails. [ER-216.] Notably, MCRD's production did not include the December 18, 2014, email string on which Buckovetz was cc'ed and in which Gen. Bierman ordered his associates to never again "run out" of Coins to sell. [*Ibid.*]

More than eight months later in November 2015, MCCS Headquarters also produced records responsive to the FOIA Request. MCCS's production included five emails that had not appeared in MCRD's March 5, 2015, production (the "Five Emails"). [ER-219.] All five of those emails included individuals whose emails used the ".mil" domain used by MCRD, so they should have been stored on the server searched by MCRD. [*Ibid.*] But MCRD had not produced them. [*Ibid.*]

The Five Emails included the December 18, 2014, email string as well as a fifth email, dated October 29, 2014, where Col. Gruny provided a summary of his efforts in liquidating coins and other memorabilia items. [*Ibid*.] These emails are particularly damning as they directly implicate Gen. Bierman of participating in the coin-selling scheme.

As Buckovetz would later learn, the Deputy Staff Judge Advocate for MCRD explicitly told the IT staff responsible for responding to the FOIA request that individuals who were named in that request should not be involved in processing the responsive emails. [ER-135–36.] Nonetheless, Col. Lee—who was a recipient of each of the Five Emails and a participant in the Coins Scheme—directed the processing of Buckovetz's request, received and reviewed a "draft production," and then sent the final production to Buckovetz. [ER-201.][2]

---

[2]  Buckovetz subsequently filed another FOIA request that MCRD closed as duplicative of the 2015 request. [ER-220.] That later FOIA request is not at issue here.

### C. Buckovetz sues the Navy for violations of FOIA, and the district court grants summary judgment to the Navy

#### 1. Buckovetz files this lawsuit

In April 2021, Buckovetz filed the instant lawsuit. [ER-209.] The complaint outlined Gen. Bierman's scheme to sell memorabilia and detailed his efforts to keep the scheme quiet, to retain control of the sales revenue, and to silence any objections thereto. [ER-211–15.] Buckovetz's complaint asserted the Navy violated FOIA by concealing or destroying documents responsive to Buckovetz's FOIA request.[3] [ER-223.]

#### 2. The Navy moves for summary judgment

One month after the complaint was filed and before any discovery was taken, the Navy moved for summary judgment, arguing that no triable issue of material fact existed as to (1) whether or not the Navy's searches for responsive records were reasonable and (2) whether anyone at the Navy independently violated FOIA by intentionally destroying records after receiving the FOIA request. [ER-122.] To support its motion, the Navy submitted two declarations.

---

[3] The Complaint also included claims brought by Lynne Bird (Buckovetz's wife) relating to a separate FOIA request. [ER-209.] The claims by Bird were later dismissed by joint stipulation. [ER-268.]

The first was a declaration from Col. Lee, who acknowledged his role as the "Initial Denial Authority" for processing Buckovetz's FOIA request, despite being one of the parties whose emails were sought by the request and a participant in the underlying Coins Scheme. [ER-200–01.] In that capacity, Col. Lee reviewed the draft production and sent it to Buckovetz. [ER-201.] Yet, he insisted that he was not instructed to, and did not, intentionally delete emails "for the purpose of keeping those emails from being produced to Mr. Buckovetz." [ER-201–202.] He also stated that he was "not aware of any deliberate actions taken by Gen. Bierman, or anyone else at MCRD, to conceal or destroy records responsive to Mr. Buckovetz's FOIA Requests." [ER-202.] With regard to the Five Emails, Col. Lee stated that he "did not intentionally or deliberately delete those emails from my mailbox after learning of Mr. Buckovetz's 2015 FOIA Request." [*Ibid.*]

Second, the Navy submitted a declaration from the MCRD's FOIA specialist Cinthia Camacho.[4] [ER-134.] Camacho's declaration described

---

[4]     The Camacho declaration was signed in January 2020 and originally filed in an earlier FOIA lawsuit Buckovetz brought against the Navy pro se. That lawsuit was dismissed without prejudice. The Navy simply refiled the Camacho declaration in this action unmodified, which is why it still bears the caption of the earlier case. [ER-134.]

MCRD's efforts to locate records responsive to Buckovetz' Request, including her work with the IT department to search for responsive emails. [ER-135.] Camacho attested that she "received the responsive emails directly from the IT department" and "did not remove or delete any emails from the production," nor did she "permit any of the individuals whose emails were requested to review the production or have a say in what was produced." [ER-136.] She acknowledged, however, that the initial search did not return all responsive emails. [*Ibid*.] Rather, when processing a FOIA request from Buckovetz's wife, MCRD identified an additional 106 pages of records "in formats not previously produced to Mr. Buckovetz." [ER-138.] MCRD did not produce those documents to Buckovetz until June 2019. [*Ibid*.]

Regarding the Five Emails that were produced by Headquarters, but were not included in MCRD's production, Camacho claimed to have conferred with IT staff "about why this would have occurred." [ER-138.] Camacho stated that "IT staff at headquarters identified several reasons the emails *might have been* missing from MCRD's search results, but we were unable to definitely determine what the cause was in this instance." [ER-138–39 (emphasis added).] She did not specify

what those "several reasons" were that supposedly could have explained the missing Five Emails. [*Ibid*.]

### 3. Buckovetz seeks discovery

As is common in FOIA cases, Buckovetz responded to the Navy's motion for summary judgment by requesting to take discovery. [ER-81.] Buckovetz argued that discovery was needed to probe whether the Navy's search for responsive records was reasonable and whether the Navy violated FOIA by destroying records before any search, adequate or not, could be conducted. [*Ibid*.] The involvement of Gen. Bierman's Chief of Staff, Col. Lee, in processing the FOIA Request against the express recommendation of MCRD's Staff Judge Advocate, the subsequent discovery of responsive records that were not part of the initial production, and the vague statements in the Camacho Declaration regarding "several reasons" that the Five Emails were not produced, all presented questions that needed to be addressed through discovery. [ER-87–90.] Moreover, Buckovetz submitted a declaration from former Director Spencer attesting the Five Emails "relate to activities that were occurring over my objection, contrary to official policy, and detrimental to the financial well-being of MCCS." [ER-112–

13.] Importantly, Director Spencer attested that based on his personal "experiences with" the four other people included on the Five Emails, he believed "there were 'coin' or 'coins' email conversations among those four persons that did not include [himself] as an addressee." [*Ibid.*]

In order to obtain answers to the open questions surrounding MCRD's actions in response to his FOIA Request, Buckovetz sought leave to depose Camacho, Col. Lee, Lt.Col. John Ming, and "a person-most-knowledgeable designated under Federal Rule of Civil Procedure 30(b)(6) regarding the Navy's efforts to comply with" the FOIA Request. [ER-92–93.] Buckovetz also sought leave to serve five document requests on the Navy. [*Ibid.*]

### 4. The district court orders the Navy to submit additional declarations

In response to Buckovetz's request for discovery, the district court ordered the Navy to provide supplemental declarations identifying possible reasons why the Five Emails were excluded from MCRD's production. [ER-51.] The district court concluded that "the Camacho and Lee declarations are not sufficiently detailed to carry Defendant's burden of demonstrating an adequate search because the declarations do not identify any reason for the five known missing emails." [ER-59.]

The court denied Buckovetz's request for broader discovery without prejudice, finding that "requiring [the Navy] to submit a more detailed affidavit is sufficient to gather additional relevant information at this time." [*Ibid.*]

### 5. The Navy submits supplemental declarations that leave open questions

In response to the district court's order, the Navy filed declarations from LtCol Matthew M. McConnell and Karl Rosenbaum. [ER-34; ER-37.] LtCol McConnell stated that Camacho was "no longer employed by MCRD," and acknowledged that he had "no first-hand knowledge of the 2015 production to Mr. Buckovetz . . . ." [ER-37–38.] He stated that several of the emails in MCRD's original production were redacted to remove mention of Gen. Bierman, but that he had since "re-released" those documents "without redaction of BGen Bierman's name." [ER-38.] LtCol McConnel did not provide any additional information concerning the Navy's search for records. [ER-37–38.]

Rosenbaum, a Marine Corps contractor whose duties including providing support for email infrastructure, offered no direct evidence regarding why the Five Emails were missing from MCRD's production. [ER-34–37.] Rather, he simply stated that "Camacho was informed by

another [Marine Corps Cyberspace Operations Group] Contractor" that there were four hypothetical reasons why the Five Emails were not initially located. [ER-35.] Those four reasons were:

    a. The end user deleted the data;

    b. The end user moved the data to a local PST file;

    c. The data exists outside of the scope of the request, for example the data had been moved to a PST file and the request did not ask for those files to be acquired, or the data exists outside the timeframe requested; or

    d. The data is not able to be located because the request specifies an exact set of search terms. For example, if the request asks for a search of the subject line, but the term is within the body of a message.

[*Ibid*.] Finally, Rosenbaum stated that "[a]t this point in time, there is no way to determine, from a systems standpoint, which of the scenarios listed above . . . resulted in the five 'missing' emails not being located by MCRD's IT team in its search." [ER-36.]

> ### 6. Buckovetz responds by explaining that the only possible reason for the missing Five Emails is that they were deleted

Buckovetz responded to the Navy's supplemental declarations by explaining that "[o]nly one reason offered by the Navy makes logical sense—deletion by custodians at MCRD." [ER-22.] That is because the

other three theoretical responses provided by the Navy could not actually apply under the circumstances.

Regarding the second proffered reason—data moved to a local PST file—Camacho previously declared that, in 2015, she directed "MCRD IT employee Rene Villagracia Armonia" to search for "emails responsive to the FOIA request that would have been saved as .pst files." [ER-136.] Col Lee's declaration also refers to this search of .pst files. [ER-202.] Thus, if the end user had moved the Five Emails to a local PST folder, those emails would have been found. Furthermore, MCRD subsequently produced the October 29, 2014 liquidation email (one of the missing Five Emails) in 2020 in response to a separate FOIA request from Buckovetz, seemingly without taking the extra step of searching .pst files. [ER-110.]

Regarding the third and fourth proffered reason—the data exists outside the scope of the FOIA request or was not responsive "to the exact set of search terms in the request"—there is no question that the Five Emails are responsive and called for by the request. All five use the word "Coins" in the subject line, and thus plainly are within "the scope of" Buckovetz's Request, which called for all emails "contain[ing]

the word 'coin' or 'coins' on the subject line or within the body of the message." [ER-230.]

Furthermore, Buckovetz explained the Navy's proffered explanation of innocent deletion in the ordinary course was not credible given (i) the Navy's production of numerous other emails from the same custodians and (ii) the uniquely damning nature of the Five Emails which make clear that Gen. Bierman spearheaded the overall coin-selling scheme. [ER-22–23.] Therefore, Buckovetz sought additional discovery "(1) requiring Gen Bierman to sit for deposition and (2) requiring the production of all communications to and from Gen Bierman relating to the FOIA process and personnel, from January 23, 2015 through May 31, 2015." [ER-23.]

### 7.    The district court denies discovery and grants summary judgment

After supplemental briefing, the district court denied Buckovetz's request for discovery and granted the Navy's motion for summary judgment. [ER-7.] The court acknowledged that the missing Five Emails "related to [the] unauthorized activities" concerning "the sale of commemorative coins, the quantity sold, and plans to reorder coins in the future." [ER-11.] The court further acknowledged that "the

concealment or destruction of records in response to a FOIA request renders a subsequent search for such records inadequate, even if that search appears reasonable when considered in isolation." [ER-14.] Finally, the District Court agreed that three of the Navy's four offered explanations for the missing Five Emails did not apply because "a search of the PST files was later conducted" and because the Five Emails "plainly fall within the scope of the request and the specified search terms." [ER-15.] Thus, the court concluded that "MCRD's failure to produce the five missing emails is most plausibly explained by the possibility that an end user deleted the data." [*Ibid.*]

Nonetheless, the district court denied Buckovetz's request for discovery, and granted summary judgment in favor of the Navy. Despite denying Buckovetz's request for discovery, the district court faulted Buckovetz for failing to "present any contrary evidence that the possible deletion of the five missing emails was motivated by an intent to evade an existing FOIA request, or that other unknown responsive emails existed and were deleted for the same reason." [ER-16.] The district court concluded that "[i]n the absence of such evidence, Plaintiff is unable to rebut the affidavits submitted by Defendant" denying that

any emails were intentionally deleted. [*Ibid*.] The district court denied Buckovetz's request for discovery because the allegations that the emails were intentionally deleted, which the discovery could have validated, were "not adequately supported by evidence in the record." [ER-17.]

This appeal followed.

## Summary Of Argument

First, the district court erred in granting summary judgment to the Navy. The evidence established that the most likely explanation for the missing Five Emails is that the Navy deleted them. The question on summary judgment, therefore, was whether *after drawing all inferences in favor of Buckovetz*, the Navy eliminated any disputed issue of fact as to whether those emails were deleted after Buckovetz's FOIA request. In granting summary judgment, however, the district court drew inferences in favor of the Navy, finding that Buckovetz had not rebutted the "possibility" the emails were deleted before the FOIA request. This was error, and drawing the proper inferences, summary judgment should have been denied.

Second, the district court should have allowed Buckovetz to take limited discovery before ruling on the Navy's summary judgment motion. The Navy's declarations in support of summary judgment are vague and leave many open questions regarding when the emails were deleted. At best, those declarations establish only "possible" answers and are consistent with the possibility that someone at the Navy deleted the emails in response to Buckovetz's FOIA request. At minimum, therefore, Buckovetz should have been allowed discovery before the district court considered the summary judgment motion on the merits.

## Standard of Review

In FOIA cases, this Court reviews de novo the district court's decision that an adequate factual basis exists to grant summary judgment. *Lane v. Department of Interior*, 523 F.3d 1128, 1135 (9th Cir. 2008); see also *Smart-Tek Services, Inc. v. U.S. Internal Revenue Service*, 829 Fed.Appx. 224, 225 (9th Cir. 2020). To the extent the district court made factual findings, those findings are reviewed for clear error. *Lane*, 523 F.3d at 1135. The district court's denial of discovery is reviewed for an abuse of discretion. *Id.* at 1134.

In reviewing the district court's decision, all the facts and evidentiary inferences must be drawn in favor of the requesting party— here, Buckovetz. *See, e.g., Zemansky v. U.S. E.P.A.*, 767 F.2d 569, 571 (9th Circ. 1985); *Chambers v. U.S. Dept. of Interior*, 568 F.3d 998, 1000, 1003 (D.C. Cir. 2009).

## Legal Discussion

## I

## The Trial Court Erred In Granting the Navy's Motion for Summary Judgment

Destruction of documents to circumvent FOIA is a "gross violation" of that statute. *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 34 F. Supp. 2d 28, 41 (D.D.C. 1998). An agency thus cannot "circumvent a FOIA request" by intentionally eliminating documents. *Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 155, n. 9 (1980). Nor is an agency "shielded from liability if it intentionally transfers or destroys a document after it has been requested under FOIA . . . ." *Chambers*, 568 F.3d at 1004.

The question here, then, is whether the Navy's declarations submitted in connection with its motion for summary judgment and supplemental briefing eliminate any disputed issue of fact regarding

whether anyone at MCRD destroyed emails to circumvent FOIA. In making that determination, this Court must draw "all justifiable inferences" in favor of Buckovetz, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and should affirm the summary judgment only if "the facts and the law will reasonably support only one conclusion." *Martinez v. Signature Seafoods Inc.*, 303 F.3d 1132, 1133 (9th Cir. 2002). By contrast, "summary judgment is inappropriate . . . if, viewing all inferences in light most favorable to" the non-moving party, "a triable issue exists as to whether" anyone at MCRD intentionally deleted emails responsive to Buckovetz's FOIA request. *Chambers*, 568 F.3d at 1004-05.

Here, the district court itself recognized that the Navy's initial declarations were insufficient to provide a factual basis for summary judgment "because the declarations do not identify any reason for the five known missing emails." [ER-59.] Thus, the court properly required the Navy to at least supplement its declarations to provide more information. Contrary to the district court's conclusion, however, the two supplemental declarations provided by the Navy did not provide sufficient additional facts to eliminate any material factual dispute

regarding whether the Missing Emails had been intentionally deleted to circumvent FOIA.

Rosenbaum's declaration offered four explanations that "*could be* the reason why the five emails were not initially located." [ER-35 (emphasis added).] As the district court recognized, however, three of those reasons did not withstand scrutiny because "a search of PST files was later conducted, and a review of the five missing emails demonstrates that those emails plainly fall within the scope of the request and the specified search terms." [ER-15.] Thus, the only explanation provided by the Navy that is consistent with the record is that the emails were deleted by *all five* of the .mil the end users. [*Ibid.* ("Accordingly, MCRD's failure to produce the five missing emails is most plausibly explained by the possibility that an end user deleted the data.").]

The district court nonetheless granted summary judgment because it found the Rosenbaum declaration was "entirely consistent with the competing possibility that the five missing emails were deleted prior to the 2015 FOIA request, either to free up very limited email storage capacity or for other reasons." [ER-15–16 (internal citations

omitted).] But the court's order misapplies the burdens and required inferences. If Rosenbaum's declaration is consistent *both* with the Navy's explanation that the end users deleted the emails as part of a routine cleaning of their electronic files *and with* Buckovetz's allegation that the emails were deleted in anticipation of or in response to his FOIA request, then summary judgment must be denied. That is because Buckovetz is entitled to all reasonable inferences and summary judgment is only appropriate if the Navy has eliminated any genuine dispute regarding why the emails were deleted. *See, e.g., Chambers*, 568 F.3d at 1004-05.

Nothing else in Rosenbaum's declaration establishes as a matter of fact, beyond material dispute, that the emails were not deleted in violation of FOIA. Rosenbaum describes the limited storage capacity on the email servers in 2015 and states that users "were required to routinely delete or archive email messages." [ER-36.] But if emails were merely "archived," they would have been located on the local PST servers the Navy acknowledged searching. And Rosenbaum's conclusion that the emails may have been "routinely delete[d]" is pure speculation. [ER-35–36.] He does not describe how "routinely" users would delete the

emails, nor does Rosenbaum explain whether or for how long deleted emails were stored in the user's deleted emails folder. [*Ibid.*] There was only one month between the date four of the missing Five Emails were sent and the date Buckovetz made his FOIA request. Nor does he explain why all five of these end users apparently deleted the same set of damning emails, while not deleting other, far older emails, that also related to the same subject matter (but failed to squarely implicate Gen. Bierman in the Coins Scandal). There is nothing in Rosenbaum's declaration to suggest users were "routinely" deleting their emails (from both their inbox *and* their deleted emails folder) so frequently that they would not have been found in that short period of time. Rosenbaum simply does not provide sufficient evidence to establish the emails were innocently deleted.

The district court was also wrong to conclude that LtCol McConnell's declaration stating that he produced "several emails from January of 2015 that were sent to or from Bierman's email address and discuss the sale of coins, further undermines [Buckovetz's] theory that individuals at MCRD deleted responsible emails to shield them from Plaintiff's FOIA request." [ER-16.] To the contrary, the fact that the

Navy was able to produce documents from the relevant time period during which the Missing Emails were sent—including older emails—strongly suggests that end users *were not routinely deleting those emails* as the Navy has speculated.

The district court also concluded that Buckovetz "is unable to rebut the affidavits submitted by [the Navy]" which expressly deny that any emails were 'intentionally delete[d] . . . for the purpose of keeping those emails from being produced." [ER-16.] Of the six people who were included on the Missing Emails, however, the Navy only submitted a declaration from Col. Lee. And the Navy does not even attempt to explain why it did not submit declarations from the others included on the Missing Emails, all of whom apparently deleted the emails in the same conspicuous pattern. The Navy's failure to produce evidence establishing that none of the users intentionally deleted emails gives rise to an inference that the evidence from the other users would have been unfavorable to the Navy. See, e.g., *United States v. Tory*, 52 F.3d 207, 211 (9th Cir. 1995) (holding that a party must be allowed to argue "the government's failure to produce relevant evidence within its control gives rise to an inference that the evidence would be unfavorable to it.");

*Singh v. Gonzales*, 491 F.3d 1019, 1024 (9th Cir. 2007), superseded by statute on other grounds, (holding that "[a] negative inference" was appropriate where "a party has relevant evidence in his control which he fails to produce, that failure gives rise to an inference that the evidence is unfavorable to him" (internal quotation marks omitted)).

Finally, other circumstances here strongly suggest that the emails were improperly deleted. The deleted emails are uniquely incriminating as to Gen. Bierman, directly tying him to the unlawful coin-selling scheme. The Navy initially failed to provide any explanation for the Missing Emails, contenting itself with the conclusory proclamation that there was, in fact, an explanation. [ER-138–39.] Then, when the district court forced the Navy to come forward with a more fulsome explanation, the Navy obfuscated behind four separate *possible* reasons—only one of which could actually apply under the circumstances. It then gave vague descriptions of its retention policy in 2015 to "routinely" delete emails, failed to explain how only the Missing Emails were not found when other emails from same time period were produced (and, therefore, were not "routinely" deleted), and failed to provide any evidence from most of the implicated email users. [ER-34–38.] Drawing all inferences from

those circumstances in favor of Buckovetz, as required, should have precluded summary judgment, particularly before Buckovetz was even allowed to conduct discovery.

In short, the district court's order granting the Navy summary judgment was erroneous. As in *Chambers*, if the record here is properly viewed in the light most favorable to Buckovetz, summary judgment is inappropriate because the Navy has not established that there are no disputed issues of fact as to whether emails were deleted in anticipation of or in response to Buckovetz's FOIA request. *Chambers*, 568 F.3d at 1004-05.

## II

### The District Court Abused Its Discretion By Not Allowing Discovery Before Granting Summary Judgment

For reasons stated in Part I, the district court should have denied the Navy's motion for summary judgment and allowed the litigation to proceed in the normal course. At minimum, however, the district court should have granted Buckovetz's request for minimal discovery before considering the Navy's motion on the merits.

"[C]ases uniformly establish that discovery may proceed in a FOIA controversy when a factual issue arises concerning the adequacy or

completeness of the government search and index." *Murphy v. Federal Bureau of Investigation*, 490 F. Supp. 1134, 1137 (D.D.C. 1980). Where the nonmoving party shows that "it cannot present facts essential to justify its opposition, the court may . . . allow time to obtain affidavits or declarations or to take discovery." *Am. Small Bus. League v. United States Dep't of Def.*, 2019 WL 4416613, at *3 (N.D. Cal. Sept. 15, 2019). In particular, where, as here, the party moving has submitted declarations containing "vague statements and discrepancies," discovery "is warranted . . . ." *Ibid.*; see also *Lion Raisins, Inc. v. U.S. Dep't of Agric.*, 636 F. Supp. 2d 1081, 1107 (E.D. Cal. 2009) ("When, as here, the adequacy of the search remains in doubt on summary judgment, courts have permitted the FOIA requester to use narrow interrogatories or depositions . . . to gather additional relevant information."); *Scharringhausen v. United States*, 2008 WL 686691, at *5 (S.D. Cal. Mar. 13, 2008) (allowing depositions of "witnesses who submitted declarations in support of defendant's motion for summary judgment" to "enable [the] plaintiff to gather additional facts relevant to the issue of whether the [agency] complied with the FOIA.").

For reasons explained in Part I, there remain many questions surrounding the Navy's vague (and often inapplicable) explanations for why their searches did not produce the missing Five Emails that were discovered on another server. The district court nonetheless granted summary judgment because Buckovetz was "unable to rebut the affidavits submitted by [the Navy]" and denied Buckovetz's request for additional discovery on the ground that Buckovetz's allegations of intentional deletion were "not adequately supported by evidence in the record." [ER-16–17.] It is, however, entirely unreasonable to grant summary judgment on the ground that Buckovetz has not submitted evidence to support his allegations while simultaneously denying him the opportunity to take the very discovery that would enable him to submit such evidence.

In many FOIA cases, the facts are not reasonably in dispute and the only question is whether the record shows "an adequate factual basis" on which to "base [a] decision" on the FOIA claim. *Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996). But this is not such a case. Unlike most FOIA claims, the dispute here does not depend solely on the types and breadth of searches the Navy performed to identify the requested

documents, nor does the action here merely challenge the Navy's application of the statute's exemptions. Rather, the facts regarding the Navy's retention and deletion of emails are in genuine dispute—in particular, there are material factual disputes about why the missing Five Emails were deleted by all of the .mil email recipients from the MCRD servers in a short period of time. And the Navy's submitted evidence on that issue does not, in fact, provide a complete explanation, but rather is based on speculation that the end users might have "routinely" deleted the emails before Buckovetz's FOIA request. [ER-35–36.] No one has produced any evidence that the email users in question did, in fact, routinely delete their emails or that "routinely" would have meant select emails on the same topic all uniformly deleted by the various end users within weeks of being sent.

Under these circumstances, it was an abuse of discretion to grant summary judgment to the Navy without allowing Buckovetz minimal discovery into the basis of the Navy's vague and incomplete declarations. If the defendant in a FOIA action can avoid discovery with such minimal effort and without providing complete explanations that eliminate any material factual dispute regarding whether the defendant

has complied with its FOIA obligations, then FOIA will be effectively rendered toothless.

## Conclusion

For the foregoing reasons, this Court should reverse the district court's summary judgment and remand for the case to proceed through the ordinary course of litigation. In the alternative, and at minimum, this Court should reverse and remand with instructions for the district court to allow the discovery requested by Buckovetz before the district court considers the Navy's summary judgment motion on the merits.

Dated: August 21, 2023

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Todd E. Lundell
Travis J. Anderson
T. Sean Mann-O'Halloran

By: /s/ Todd E. Lundell
    Todd E. Lundell
    Attorneys for Appellee Dennis
    M. Buckovetz

## Certificate of Compliance

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and Ninth Circuit Rule 32-1, I certify that the attached brief is proportionally spaced, has a typeface of 14 points, and contains 6,286 words.

Dated: August 21, 2023

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Todd E. Lundell
Travis J. Anderson
T. Sean Mann-O'Halloran

By: /s/ Todd E. Lundell
    Todd E. Lundell
    Attorneys for Appellee Dennis
    M. Buckovetz

**Certificate of Service**

I hereby certify that I electronically filed the foregoing Appellee's Brief with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on August 21, 2023.

I certify that all participants in the case are registered CM/ECF Users and that service will be accomplished by the appellate CM/ECF system.

Dated:  August 21, 2023

*/s/ Laurie Palmer*
Laurie Palmer